## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYASIA JOHNS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIVE BELOW, INC.,<br><br>Defendant. | Case No. 2:26-cv-04954<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tyasia Johns ("Plaintiff") through undersigned counsel, brings this Class Action Complaint against Defendant Five Below, Inc. ("Defendant" or "Five Below"), and in support thereof alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this class action to halt and remedy Defendant's retention of windfall proceeds tied to tariffs imposed under the International Emergency Economy Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, which Defendant passed onto consumers in the form of increased pricing and which Defendant now stands to recover from the federal government through court-ordered refunds.

2.      Because only the importer of record can obtain tariff refunds from the government, and because consumers frequently shoulder the ultimate economic burden of the previously imposed tariffs through higher retail prices, Defendant's approach results in a structural mismatch between injury and recovery that leaves consumers uncompensated. Put simply, while the importer fronts the tariff-related cost, the consumer ultimately pays it.

3.    On February 20, 2026, the U.S. Supreme Court released its decision in *Learning Resources, Inc. v. Trump*, where it held that the "IEEPA does not authorize the President to impose tariffs," thus striking down the IEEPA-based tariffs. 607 U.S. 229, 255 (2026).

4.    Shortly thereafter, on March 4, 2026, in *Atmus Filtration, Inc. v. U.S.* before the U.S. Court of International Trade, Judge Richard Eaton ordered that, in light of the Supreme Court's *Learning Resources* decision, "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties."[1] Thus, as a result of the order, the U.S. government must "begin paying potentially billions of dollars in refunds to importers who paid tariffs that the Supreme Court said last month were collected illegally."[2]

5.    Following Judge Eaton's order, the U.S. Customs and Border Protection ("CBP") launched "the first phase of the Consolidated Administration and Processing of Entries (CAPE) tool" which "will simplify the International Emergency Economic Powers Act (IEEPA) duty refund requests made pursuant to court order and in accordance with appropriate statutory authority by providing an electronic pathway to submit valid IEEPA duty refund claims."[3]

6.    By April 26, 2026, less than a week after the portal was launched, CPD had received "more than 75,000 refund requests from U.S. businesses and other importers[,]" with "[m]ore than 47,000 claims encompassing some 11 million payments" filed.[4]

---

[1] Case No. 1:26-cv-01259-RKE, ECF No. 21, at 2-3 (2026).

[2] David Lawder & Tom Hals, *Judge Orders US Customs to Process Refunds on Illegal Trump Tariffs*, REUTERS (Mar. 4, 2026), https://www.reuters.com/world/us/judge-orders-trump-administration-finalize-goods-entering-us-without-assessing-2026-03-04/.

[3] Consolidated Administration and Processing of Entries (CAPE) Phase 1, U.S. CUSTOMS & BORDER PROT. (April 8, 2026), https://www.cbp.gov/sites/default/files/2026-04/trade_information_notice_cape_508c.pdf.

[4] Megan Cerullo, Feds Have Rejected 15% of Businesses' Tariff Refund Claims,

7.      However, upon information and belief, the businesses that have applied for and/or received refunds are not publicly disclosed or available. Thus, the public may only learn of whether a business has applied for and/or received a refund if the business itself makes a public representation as such, or if the business had filed suit before the Court of International Trade, as several businesses did prior to Judge Eaton's order.

8.      Despite the Supreme Court's invalidation of IEEPA-based tariffs, the persons who actually bore the tariff burden—Defendant's customers—have no direct recourse in the Court of International Trade, where Defendant, as importer of record, is positioned to recoup all such duties.

9.      Companies, even those which passed the entirety of their tariff burdens onto their customers, nonetheless remain fully empowered to recover a complete refund for any unlawful tariffs paid. Because U.S. customers are paying an estimated two-thirds of tariff-related costs, companies, including Defendant, stand to obtain an improper double recovery, absent restitution to their customers.[5]

10.     This lawsuit seeks to prevent Defendant Five Below from double recovery. Defendant has made no commitment to return any portion of anticipated tariff refunds to the consumers who ultimately paid such costs.

11.     Plaintiff seeks an order requiring Defendant to disgorge and return to Plaintiff and the Class all IEEPA-related costs embedded in elevated consumer prices with interest.

12.     Plaintiff and the Class are entitled to restitution of the tariff-related overcharges they paid or a proportionate share of any tariff refunds Defendant recovers, along with interest and attorneys' fees and costs.

---

[5] *See* Nick Lichtenberg, *Goldman Sachs Doubles Down on Tariff Research that Infuriated Trump, Saying Average Americans Will Bear Two-Thirds of the Costs*, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

## PARTIES

13.     Plaintiff Tyasia Johns is, and at all times relevant was, a citizen and resident of Kings County, New York. Plaintiff Johns shopped at and made purchases from Defendant Five Below during the Relevant Time Period, defined *infra*.

14.     Defendant Five Below is a company incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 701 Market Street, Suite 300 in Philadelphia, Pennsylvania 19106.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000.00, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendant.

16.     This Court has personal jurisdiction over Defendant because Defendant is organized in and maintains its principal place of business in the Commonwealth of Pennsylvania, conducts substantial business in Pennsylvania, and ships goods to and from Pennsylvania regularly.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, *inter alia*, Defendant is subject to the personal jurisdiction of this District, transacts substantial business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted occurred in this District.

## FACTUAL BACKGROUND

### A.      Defendant Five Below's Business Model

18.      Founded in 2002, Defendant Five Below "is a leading high-growth value retailer offering trend-right, high-quality products loved by tweens, teens and beyond."[6] At the center of its business model are its low-priced offerings, with "most items priced between $1 and $5 and some value items priced beyond $5."[7] As of January 31, 2026, Five Below operates a total of 1,921 stores across 46 U.S. states, and hopes to expand to more than 3,500 locations.[8]

19.      In order to offer products at such prices, Defendant relies heavily on overseas imports, as "a significant majority of [its] merchandise is manufactured outside of the United States, with China as the single largest source of merchandise [Defendant] import[s] and source[s] from domestic vendors."[9] According to Defendant, "products representing around 60% of its total cost of goods were imported from China[.]"[10]

20.      This model has been extremely lucrative for Five Below: in fiscal year 2025, its revenue was approximately $4.7 billion.[11]

### B.      Implementation and Invalidation of the IEEPA-based tariffs

21.      Starting in February 2025, the Trump Administration issued a series of executive orders imposing tariffs on goods from most foreign countries, pursuant to the IEEPA and

---

[6] About Five Below, FIVE BELOW, https://www.fivebelow.com/info/about (last visited June 30, 2026).

[7] *Id.*

[8] FIVE BELOW, 2025 ANNUAL REPORT 5 (2026), https://s22.q4cdn.com/969286406/files/doc_financials/2025/ar/458685_P47352_FIVE-BELOW_2025-AR_PROOF_REV3_RC.pdf (last visited June 30, 2026).

[9] *Id.* at 18.

[10] Bill Peters, *Five Below Says Some Prices Will Rise Amid Pinch From Tariffs. Stock Rallies Anyway.*, MARKETWATCH (Mar. 19, 2025), https://www.marketwatch.com/story/five-belows-first-quarter-outlook-is-more-upbeat-than-its-full-year-one-f42a9719.

[11] ANNUAL REPORT, *supra* note 4, at 40.

predicated on a purported national emergency. Among the targeted countries were prominent U.S. trading partners like Canada, Mexico, and China.

22. As part of the IEEPA-based tariffs, the Trump Administration imposed a baseline tariff of 10% on nearly all imports, a tariff of 25% on most goods from Canada and Mexico, and tariffs of up to 145% on goods imported from China.

23. On February 20, 2026, approximately a year after the Trump Administration first began imposing them, the Supreme Court issued its decision invalidating all IEEPA-based tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 607 U.S. at 255.

24. Subsequently, President Trump issued an Executive Order terminating the tariffs and, on February 22, 2026, U.S. Customs and Border Protection ("CBP") announced that it would cease collection of all IEEPA-based tariffs, beginning on February 24, 2026.

25. In sum, the IEEPA-based tariffs were applied between February 1, 2025 and February 24, 2026 (the "Relevant Time Period").

**C.      Defendant's IEEPA-based Price Increases**

26. Defendant is a major importer, with a significant portion of its American sales attributable to international imports, "with China as the single largest source of merchandise [Defendant] import[s] and source[s] from domestic vendors."[12]

27. Because Five Below's business model relies so heavily on imports, it was particularly vulnerable to the IEEPA tariffs.[13]

---

[12] *See* ANNUAL REPORT, *supra* note 4, at 18.

[13] *Id.*

28.    Recognizing this, Five Below considered its options, including possible diversification of the countries it imports its products from and raising prices. Five Below did temporarily pause its imports from China,[14] before ultimately "reduc[ing] its sourced merchandise from China by about 10%[.]"[15]

29.    However, more importantly, Defendant Five Below "fully offset" tariff impacts "at the item level through pricing actions, vendor negotiations and product redesign[,]" with "[p]ricing contribut[ing] a relatively larger share[.]"[16] Five Below's CEO, Winnie Park, confirmed this strategy on an earnings call, stating that the company's initiates to navigate the IEEPA tariffs would include "selective price adjustments[.]"[17]

30.    Five Below's decision to raise prices in response to the IEEPA tariffs contributed to $4.76 billion in revenue—its highest-revenue year to date.[18]

31.    Thus, Defendant was not only able to insulate profits from the IEEPA tariffs; it was able to successfully leverage the tariffs to *increase* profits at the expense of its U.S. consumer base.

32.    As a direct result of Defendant's pass-through pricing, Plaintiff and Class Members paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs.

---

[14]  *Five Below Halts Imports From China Amid Tariffs*, WTVY (Apr. 15, 2025), https://www.wtvy.com/2025/04/15/five-below-halts-imports-china-amid-tariffs/.

[15]  Jacob Willeford, *Iconic Discount Chain That's 'Cheaper Than Dollar Tree' To Open 30 New Stores in MONTHS and 150 By the End of 2025*, THE U.S. SUN (June 4, 2025), https://www.the-sun.com/money/14400704/five-below-opening-new-stores/.

[16]  Swagata Bhattacharya, *Five Below's Tariff Management Mitigates Cost Pressures Effectively*, YAHOO! FINANCE (May 4, 2026), https://finance.yahoo.com/economy/policy/articles/five-belows-tariff-management-mitigates-165400686.html.

[17]  Anne Erickson, *Five Below Considering 'Price Adjustments'*, MEN'S JOURNAL (Mar. 29, 2025), https://www.mensjournal.com/news/five-below-considering-price-adjustments.

[18]  *See* Five Below Revenue 2012-2026, MACROTRENDS, https://www.macrotrends.net/stocks/charts/FIVE/five-below/revenue (last visited June 30, 2026).

**D.      Defendant's Response to Available Tariff Refunds**

33.      On its most recent earnings call, Five Below's [position], Daniel Sullivan, in response to a question regarding IEEPA tariff refunds, stated, "[O]n the IEEPA tariffs, we've not publicly sized or quantified that[.] . . . What I would say is we've taken all the appropriate steps to secure the claims and avail ourselves to these claims. And so from an administrative perspective, I think we're in very good standing here towards the refunds."[19]

34.      Five Below is entitled to seek a refund of the IEEPA tariffs and duties it paid and passed onto its customers by way of price increases.

35.      Upon information and belief, Five Below has not public confirmed whether it has applied for refunds of the IEEPA tariffs and duties it paid. As such, it is currently unknown whether Five Below has officially sought refunds from CBP.[20]

36.      Upon information and belief, Five Below has not publicly stated whether it intends to provide its customers with any refunds for any increased prices paid as a result of the IEEPA tariffs that Five Below paid.

37.      Upon information and belief, Five Below has not refunded or returned to its customers the increased prices they paid as a result of, due to, and/or to offset any or all of the IEEPA tariffs imposed and subsequently struck down.

---

[19] Five Below (FIVE) Q1 2026 Earnings Transcript, THE MOTLEY FOOL (June 4, 2026), https://www.fool.com/earnings/call-transcripts/2026/06/04/five-below-five-q1-2026-earnings-transcript/.

[20] Whether Five Below has requested, and/or will seek, a refund(s) from the United States for the tariffs it paid is *immaterial* to the instant claim. Five Below has the legal right to do so; whether it chooses to request a refund(s) is its choice. Moreover, whether or not it obtains a refund, Five Below has nonetheless obtained a benefit from its customers in the form of price increases it charged in response to the IEEPA tariffs. It would be unjust for Five Below to retain that benefit now that the IEEPA tariffs have been declared illegal. If Five Below obtains a refund and refuses to pass the refund to its customers, its conduct and retention of the refund would be that much more egregious and unjust, and would constitute a more flagrant "double recovery." However, it cannot be overstated that Five Below's receipt of a refund(s) is *not* a condition of Plaintiff's recovery here.

38.     The IEEPA-based tariffs caused the collection of approximately $166 billion in duties. And as a major U.S. importer, Defendant stands to receive refunds in the tens of millions of dollars, potentially exceeding $100 million.

39.     Although Defendant seeks to, and very likely will, recover tariff refunds, it was not Defendant which bore the brunt of the IEEPA-based tariffs; it was Defendant's customers. Defendant now seeks what amounts to a double recovery: the first recovery took place in the form of revenue generated from its increased prices; the second will come in the form of its forthcoming tariff refund from the federal government.

40.     Defendant has made no statements as to how it intends to use the IEEPA-based tariff refunds it seeks, and there is no indication that it plans to compensate the specific consumers who overpaid during the Relevant Time Period, nor to provide any restitution for past overcharges.

## CLASS ALLEGATIONS

41.     Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class:

> **Nationwide Class**
> All individuals in the United States who purchased, through any
> Five Below retail channel, any good subject to the IEEPA-based
> tariffs.

42.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state, or local governments; and the judge(s) presiding over this matter and the clerks and family members of said judge(s).

43.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

44. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45. **Numerosity**: The Members of the Class are so numerous that joinder of all members in a single proceeding would be impracticable. Defendant operates thousands of locations across the United States, sells millions of products monthly, and serves millions of customers. Thus, upon information and belief, the proposed Class includes millions of individuals who purchased goods subject to the IEEPA-based tariffs during the Relevant Time Period.

46. **Typicality**: Plaintiff's claims are typical of the claims of the Class that Plaintiff seeks to represent. Plaintiff, like all proposed members of the Class, purchased goods from Defendant that were imported from countries subject to IEEPA tariffs at prices inflated by Defendant's pass-through pricing. Plaintiff and members of the Class were injured by the same price increases. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all members of the Class.

47. **Adequacy**: Plaintiff will fairly and adequately protect the interests of members of the Class. Plaintiff is an adequate representative of the Class and has no interests adverse to, or in conflict with, the Class that Plaintiff seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

48. **Superiority and Manageability**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the

burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

49.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any potential questions affecting only individual members of the Class. Such common questions of law or fact include, *inter alia*:

   a. Whether increased prices paid by Defendant's customers were attributable to IEEPA tariffs;

   b. Whether Defendant must refund tariff-related duties to customers who had paid them in the form of increased prices;

   c. Whether Defendant's retention is of increased consumer payments related to IEEPA tariffs constitutes unjust enrichment;

   d. Whether Defendant's conduct was unfair or deceptive when it upcharged its customers in response to tariff-related costs before subsequently retaining reimbursements of those tariff changes;

   e. Whether Defendant committed unfair practices under consumer statutes when it simultaneously collected consumer tariff pass-throughs while pursuing government refunds without disclosing that arrangement or establishing a consumer refund mechanism;

11

f.  Whether Defendant's failure to disclose its pending CIT lawsuit to customers constitutes a material omission or misrepresentation under consumer statutes;

g.  Whether Defendant's conduct has harmed Plaintiff and the Class uniformly;

h.  The measure of damages available to Plaintiff and the Class for paying increased prices caused by Defendant's tariff pass-through; and

i.  Whether Plaintiff and the Class are entitled to restitution, damages, treble damages, or injunctive relief.

50.  Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individuals are insufficient to make individual lawsuits economically feasible.

## CLAIMS FOR RELIEF

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

51.  Plaintiff realleges and incorporates the above allegations as if fully set forth below.

52.  Defendant increased the prices charged to Plaintiff and Class Members to recoup costs and duties associated with tariffs imposed pursuant to the IEEPA during the Relevant Time Period, thereby shifting the tariff-related costs to Plaintiff and Class Members through higher transaction prices.

53.  By paying the increased prices, Plaintiff and Class Members conferred a direct monetary benefit upon Defendant in the form of tariff-related cost recovery embedded in the prices charged.

54.  Defendant had knowledge of, appreciated, and voluntarily accepted this benefit because Defendant (a) intentionally implemented price increases for the stated purpose of

recouping IEEPA tariff costs, and (b) retained the proceeds from those increases paid by Plaintiff and class members.

55.    Allowing Defendant to retain the tariff-related cost recovery collected from Plaintiff and Class Members while also recovering the same costs from the federal government would result in a double recovery to Defendant for the same alleged injury.

56.    Equity and good conscience require that Defendant not be permitted to retain the benefit it obtained from Plaintiff and Class Members to the extent that Defendant has been, or will be, made whole for the same tariff-related costs through its litigation recovery.

57.    Defendant's retention of the benefit conferred by Plaintiff and Class Members, without providing restitution or disgorgement corresponding to any recovery of the same tariff-related costs from the federal government, would be unjust, inequitable, and contrary to principles of fairness.

58.    Plaintiff and Class Members lack an adequate remedy at law to prevent Defendant's unjust enrichment because, absent equitable relief, Defendant will retain amounts collected from Plaintiff and class members that duplicate the amounts Defendant has been, or will be, reimbursed through its litigation recovery for the same tariff-related costs.

59.    Accordingly, Plaintiff and Class Members seek restitution and/or disgorgement from Defendant in an amount equal to the tariff-related cost recovery embedded in the prices paid by Plaintiff and Class Members to the extent those same costs are recovered by Defendant from the federal government, together with pre- and post-judgment interest, and such other and further equitable relief as the Court deems just and proper.

## COUNT II
### MONEY HAD AND RECEIVED
**(On Behalf of Plaintiff and the Class)**

60.    Plaintiff realleges and incorporates the above allegations as if fully set forth below.

61. This Count specifically concerns Defendant's receipt and expected retention of government refund proceeds, which, in fairness, should be considered a return of funds that were economically borne by Plaintiff and the Class, rather than by Defendant.

62. Defendant received money from Plaintiff and the Class in the form of inflated prices they paid during the Class Period as a result of Defendant passing off its IEEPA-based tariff costs to its customers.

63. The purpose of it receiving this money through its inflated pricing was to pay IEEPA-based duties.

64. The Supreme Court has since concluded that the IEEPA-tariffs were unenforceable and that the Trump Administration lacked the authority to impose them.

65. The money that Defendant's customers paid as a result of the inflated prices related to the IEEPA tariffs rightfully belongs to Plaintiff and the Class.

66. Defendant has not returned the money, nor has it represented that it has any intention of doing so.

67. The principles of equity and fairness demand that Defendant is obligated to return the money its customers paid as a result of the inflated prices they paid, which Defendant imposed in order to financially shield itself from the IEEPA-based tariffs.

## COUNT III
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiff and the Class)

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69. The Declaratory Judgments Act, 28 U.S.C. §§ 2201, *et seq.* authorizes courts to declare rights, status, and other legal relations so as to afford litigants relief from uncertainty and insecurity.

70. An actual controversy has arisen in the wake of Defendant's willful retention of its IEEPA-related tariff price increases, which were borne by Defendant's customers, including Plaintiff and the Class.

71. Plaintiff seeks a declaration that, where a business like Defendant which seek and/or receive a refund from the federal government for amounts paid as a result of, due to, or to offset any or all of the IEEPA-based tariffs, the business's pursuit or receipt of such a refund is *not* a condition, precondition, or prerequisite for a consumer to be able to seek and/or receive a refund(s) of any amounts the consumer paid to the business as a result of, due to, and/or to offset any or all of those IEEPA-based tariffs and/or duties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

a. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as Class Representative, and appointing undersigned counsel to represent the Class;

b. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

c. Awarding Plaintiff and the Class actual damages that include applicable compensatory, exemplary, and statutory damages, as allowed by law;

d. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

e. Awarding attorneys' fees and costs, as allowed by law;

f. Awarding prejudgment and post-judgment interest, as provided by law;

g. Granting such other or further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of the Class, demands a trial by jury as to all issues triable of right.

Dated: July 16, 2026                                    Respectfully submitted,

                                                        */s/ Andrew W. Ferich*
                                                        Andrew W. Ferich (PA ID 313696)
                                                        **AHDOOT & WOLFSON, PC**
                                                        201 King of Prussia Road, Suite 650
                                                        Radnor, PA 19087
                                                        Telephone: (310) 474-9111
                                                        Facsimile: (310) 474-8585
                                                        aferich@ahdootwolfson.com

                                                        *Counsel for Plaintiff and the Proposed Class*